FILED IN CLERK'S OFFICE
U.S.D.C.  Atlanta

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MAR 1 2 2007

JAMES N. HATTEN, Clerk
By: _Jklinch_ Deputy Clerk

| | |
|---|---|
| **JERRY TRONCONE, JACQUELYNN** ) | |
| **WOOD, and JANET HILL,** ) | |
| ) | |
| **Plaintiffs,** ) | **1 07 CV 0576** |
| ) | |
| **v.** ) | **CIVIL ACTION NO.:** _____ |
| ) | |
| **BRIARCLIFF SUMMIT LP, II,** ) | |
| **BRENCOR MANAGEMENT LLC,** ) | **WSD** |
| **LEE ASSET MANAGEMENT** ) | |
| **PROPERTIES, LLC, and** ) | |
| **PAULETTE BAKER,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

COME NOW Plaintiffs Jerry Troncone ("Mr. Troncone"), Jacquelynn

("Jackie") Wood ("Ms. Wood"), and Janet Hill ("Ms. Hill") and file this Complaint

against Defendants Briarcliff Summit LP, II ("Briarcliff Summit LP"), Brencor

Management LLC ("Brencor"), Lee Asset Management Properties, LLC ("Lee

Asset Management"), and Paulette Baker ("Ms. Baker"), alleging as follows.

## NATURE OF PLAINTIFFS' CLAIMS

1.

Briarcliff Summit is a nine-story apartment building located at 1050 Ponce de Leon Avenue, Atlanta, Georgia 30306. The demographic of tenants residing at Briarcliff Summit is primarily disabled and elderly individuals. Most, if not all, of the tenants receive rental subsidies from the United States Department of Housing & Urban Development ("HUD"). The tenants have experienced numerous problems with Briarcliff Summit and its management related to the lack of security, the unsanitary conditions, and the state of disrepair of the building. Defendants have refused or neglected to adequately address these problems. Plaintiffs have suffered losses resulting from Defendants' refusal to reach any satisfactory long-term solution to these problems. This Complaint seeks compensatory and punitive damages for Defendants' failure to comply with federal laws, state laws, and the parties' Lease Agreements, as well as injunctive relief.

## THE PARTIES

2.

Plaintiffs are residents of Briarcliff Summit, a high-rise apartment building for elderly and disabled tenants located at 1050 Ponce de Leon Avenue, Atlanta, Georgia 30306.

2

3.

Plaintiff Troncone suffers from diabetes and glaucoma, conditions that have rendered him visually impaired. Mr. Troncone's disabilities substantially limit his major life activities.

4.

Plaintiff Wood suffers from congenital glaucoma and aniridia, conditions that have rendered her visually impaired. As a result of her disabilities, Ms. Wood's ability to perform major life activities is substantially limited.

5.

Plaintiff Hill suffers from various mental conditions, including chronic depression and obsessive compulsive disorder, and various physical conditions, such as heart disease and emphysema. Ms. Hill's disabilities substantially limit her performance of major life activities.

6.

Defendant Briarcliff Summit LP is a Georgia limited partnership with its principal place of business in Atlanta, Georgia. Briarcliff Summit LP owns the Briarcliff Summit apartment building that is the subject of this Complaint.

7.

Defendant Brencor is a corporation organized under the laws of the State of Georgia with its principal office located in Atlanta, Georgia. Brencor was the management company of Briarcliff Summit until the summer of 2006.

8.

Defendant Lee Asset Management is a corporation organized under the laws of the State of Tennessee and operates its principal office in Knoxville, Tennessee. Lee Asset Management is the managing agent of Briarcliff Summit.

9.

Defendant Baker is a resident of Georgia. Ms. Baker was the on-site manager of Briarcliff Summit until late 2006 or early 2007.

## JURISDICTION AND VENUE

10.

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs seek redress for violations of the Fair Housing Act Amendments of 1988, 42 U.S.C. § 3601, *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

4

11.

The Court has personal jurisdiction over all Defendants with respect to the claims set forth in this Complaint. This Court has personal jurisdiction over Defendants Briarcliff Summit LP, Brencor, and Lee Asset Management because these entities transact business in the State of Georgia and in this district. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). This Court has personal jurisdiction over Defendant Baker because she is domiciled in the State of Georgia. *Milliken v. Meyer*, 311 U.S. 457 (1940).

12.

Pursuant to 28 U.S.C. § 1391, venue is proper in this District and Division because (a) Defendants reside in this district, by virtue of being subject to the personal jurisdiction of this Court as set forth herein, and (b) the events and omissions giving rise to Plaintiffs' claims occurred in this District.

13.

No other forum would be more convenient for the parties and witnesses to litigate this case.

## FACTUAL ALLEGATIONS

14.

Through HUD's subsidized housing program, the government provides

housing assistance for senior citizens and persons with disabilities.  HUD provides

funds directly to apartment owners to subsidize the rental payments of qualified

tenants, which limit the monthly rent payment of the assistance recipients.

15.

Plaintiffs, as well as other tenants residing at Briarcliff Summit, are

recipients of rental assistance from HUD's subsidized housing program.

16.

Defendants accept rental payments from HUD and apply those payments

towards tenants' monthly rental payments.

17.

According to HUD's Resident Rights & Responsibilities, which apply to

tenants receiving subsidized housing assistance, tenants have "[t]he right to live in

decent, safe, and sanitary housing," "[t]he right to have repairs performed in a

timely manner," and "[t]he right to equal and fair treatment and use of [the]

building's services and facilities, without regard to race, color, religion, gender,

6

disability, familial status (children under 18), national origin (ethnicity or language), or in some circumstances, age."

18.

As described in more detail below, conditions at Briarcliff Summit have been detrimental to the health, safety, and comfort of the tenants at Briarcliff Summit for the past several years.

19.

Numerous advocacy organizations, including the Georgia Advocacy Office and the Atlanta Legal Aid Society, Inc., have attempted to assist the tenants of Briarcliff Summit in seeking improvement of the living conditions at Briarcliff Summit.

20.

The tenants of Briarcliff Summit have also attempted to organize themselves into a tenants' association to seek improvement of the living conditions at Briarcliff Summit.

21.

The individual tenants and advocacy organizations have contacted building management on numerous occasions to request improvement of the living conditions at Briarcliff Summit.

7

22.

Despite the diligent efforts of the advocacy groups and the tenants themselves, Defendants have refused to acknowledge and rectify the problems. As a result, the conditions at Briarcliff Summit remain unsafe, uncomfortable, and unhealthy.

## Unsafe Conditions

23.

Briarcliff Summit is unsafe. Defendants have refused to provide adequate security for the elderly and/or disabled tenants at Briarcliff Summit, despite Plaintiffs' repeated requests.

24.

In June 2005, after hiring a security guard for one week, building management discontinued this service.

25.

In the spring of 2006, building management implemented a door monitor program that compensates certain tenants for serving as "door monitors" during the hours of 6:00 p.m. to 6:00 a.m. daily.

8

26.

However, building management failed to enforce the door monitor program.
The door monitors are not consistently at the designated station by the front door.
No door monitors are posted at any of Briarcliff Summit's five other doors.

27.

This is just one factor contributing to the unsafe conditions at Briarcliff
Summit. Briarcliff Summit is also a haven for various types of illicit activity,
which places Plaintiffs and other tenants squarely in the face of danger.

28.

Prostitutes and drug dealers frequent the building.

29.

In the summer of 2001, a tenant was sexually assaulted in the laundry room
during the daytime.

30.

From November 2004 to December 2005, the Atlanta Police Department
was called to Briarcliff Summit more than 60 times for various incidents ranging
from property damage to robberies to a report of a sex offense.

9

31.

More recently, from January 1, 2006 to August 31, 2006, the Atlanta Police Department was called to Briarcliff Summit's address to investigate 250 crimes, including rape, robbery, aggravated assault, and narcotics offenses.

32.

Plaintiffs and other tenants have reported these various incidents to Defendants on multiple occasions. Defendants have had ample time and opportunity to address the security problem. However, Defendants have not made any visible attempt to respond to Plaintiffs' requests to improve the security of the building and protect the safety of the tenants.

## Dysfunctional Elevators

33.

Briarcliff Summit is a nine-story apartment building. The 200 tenants of Briarcliff Summit -- all of whom are elderly and/or disabled -- are served by only two elevators. Recently, at least one of the two elevators was not working properly for several months.

10

34.

In late August 2006, while two tenants were riding the elevator, the elevator fell three floors.

35.

On more than one occasion, elevator doors have opened onto an empty elevator shaft.

36.

On more than one occasion, including in April and May 2006, emergency medical personnel had difficulty reaching a tenant in need of medical attention because the elevators were not working properly.

37.

Despite the fact that tenants have repeatedly notified management that the elevators are in disrepair, building management has failed to timely or adequately repair the elevators.

38.

Given that elderly and/or disabled tenants reside in Briarcliff Summit, it is critical that building management maintain functional elevators should an emergency arise.

11

## Dysfunctional Intercom System

39.

Briarcliff Summit is equipped with an intercom system. Speakers in each apartment connect tenants to the intercom system. The intercom system is used by management to provide announcements and emergency notifications to tenants.

40.

The intercom system at Briarcliff Summit does not work consistently, and requests for repairs to the intercom system are not promptly performed.

41.

Given that the intercom system is used to notify the elderly and/or disabled tenants of any emergency that may arise, it is imperative that the intercom system is properly maintained and functional.

## Dysfunctional Emergency Call-for-Aid Cords

42.

The individual apartments at Briarcliff Summit are equipped with emergency pull cords. When tenants pull the cords, a button on a notification board, corresponding to the apartment in which the cord was pulled, lights up. The notification board is located outside the management office. Tenants can signal for assistance in cases of emergency by pulling their emergency cords.

12

43.

According to HUD inspection reports, as of December 2004, 41% of the emergency pull cords in the tenants' apartments were inoperable.

44.

In apartments that have properly-functioning emergency cords, when tenants pull the emergency cords, building management has failed to respond to their calls for aid.

45.

Management is aware that the emergency cords are not properly functioning, based on tenants' complaints and HUD inspection reports.

46.

Because Briarcliff Summit houses the elderly and/or the disabled, it is critical that the emergency pull cords are fully functional in the event an emergency should arise. Management should diligently respond to calls for aid signaled by use of the pull cords for the same reason.

47.

By failing to maintain the emergency pull cords and refusing to respond to emergencies signaled by the tenants' use of the pull cords, Defendants have perpetuated an unsafe situation at Briarcliff Summit.

13

## **Failure to Perform Apartment Repairs**

48.

When tenants at Briarcliff Summit request repairs in their apartments,

Defendants ignore these requests for extended periods of time.

49.

For example, in the summer of 2005, a leaking pipe flooded the apartment of

Plaintiff Wood on four occasions before building management repaired the leak.

The leakage caused damage to Ms. Wood's clothing and furnishings. Building

management refused to reimburse Ms. Wood for any of these costs.

50.

Many tenants, including Plaintiffs Hill and Wood, among others, have

experienced problems with the air conditioning units in their apartments. Faulty

air conditioners pose a significant health and safety risk for the elderly and/or

disabled residents of Briarcliff Summit, particularly during the hot summer months

in Atlanta. Plaintiffs' requests for the air conditioning units to be repaired were

met with resistance by Defendants. Defendants have refused to repair the air

conditioning units in a timely manner or at all.

14

51.

For example, Plaintiff Hill reported to management that her air conditioner was not working properly in the spring of 2006. After several months of waiting for management to repair her air conditioner, she ultimately had to have the air conditioner repaired herself.

52.

Plaintiff Wood reported that her air conditioner was not working in July 2006, but management failed to repair Plaintiff Wood's air conditioner for several months.

53.

Numerous air conditioners in other apartments at Briarcliff Summit remain in disrepair to this day.

## Unsanitary Common Areas and Public Facilities

54.

Defendants fail to maintain the common areas and public facilities at Briarcliff Summit. As a result, these areas are unsanitary and uncomfortable.

15

55.

Briarcliff Summit is equipped with a trash chute that allows tenants to dispose of their household garbage without exiting the building. In December 2005, the trash chute was backed up to the eighth floor.

56.

The public stairwells and elevators at Briarcliff Summit regularly contain garbage. Building management has failed to clean these areas on a timely basis.

57.

In addition, on multiple occasions, individuals have defecated and urinated in the stairwells and elevator. Building management has failed to clean these areas on a timely basis.

58.

Plaintiff Troncone and other tenants have informed management about the problems associated with garbage and human waste in the various common areas and public facilities at Briarcliff Summit. The presence of waste in the common areas is particularly problematic for visually-impaired tenants. However, despite receiving notice that the common areas are unclean, management has refused to adequately address the problem.

16

## Inadequate Tenant Notification

59.

Management provides notices of important events – such as community and
social gatherings, apartment inspections, and tenant recertifications to remain in
HUD's subsidized housing program – by placing flyers on bulletin boards and
under tenants' doors.

60.

Many of the tenants of Briarcliff Summit, including Plaintiffs Troncone and
Wood, are visually impaired and unable to review messages placed on bulletin
boards by management.

61.

Several visually-impaired tenants, including Plaintiffs Troncone and Wood,
requested that management provide oral notification of the contents of these
notices.

62.

Plaintiffs also sought assistance from the Georgia Advocacy Office. The
Georgia Advocacy Office contacted building management on Plaintiffs' behalf in
August 2003 requesting a reasonable accommodation of the visually-impaired

17

tenants' needs. The reasonable accommodation requested at this time was oral notification of the information provided on the notices.

63.

Despite these requests, management has refused to provide Plaintiffs Troncone and Wood, and other visually-impaired tenants, with oral notification of the contents of the posted notices, causing these tenants to be unaware of important announcements regarding activities and events at Briarcliff Summit.

## Harassment by the On-Site Manager

64.

On numerous occasions, the former on-site apartment manager, Defendant Baker, exhibited open hostility to the tenants of Briarcliff Summit.

65.

For example, Ms. Baker made false accusations against tenants. When an elevator was broken in the summer of 2006, Ms. Baker accused Mr. Troncone of breaking the elevator.

66.

According to the Lease Agreement, management has the right to access the apartments. This right is limited, however. Management is to enter apartments "only during reasonable hours, to provide reasonable advance notice of his/her

18

intent to enter the unit, and to enter the unit only after receiving the [tenant's] consent to do so," except in emergency situations.

67.

Ms. Baker used her right to inspect apartments to harass tenants by entering without providing reasonable notice.

68.

In January 2006, Plaintiff Troncone distributed a flyer informing tenants that if they had concerns regarding security or building conditions, they could contact him. In response, Ms. Baker informed Mr. Troncone that she believed he had violated his lease by disturbing or harassing other residents and interfering with management. Ms. Baker warned Mr. Troncone that his lease could be terminated for additional similar violations.

69.

In July or August 2006, Ms. Baker entered Plaintiff Troncone's apartment without providing reasonable notice and without Mr. Troncone's consent.

70.

Ms. Baker inspected Plaintiff Wood's apartment on three occasions in August and September 2006 without providing reasonable notice.

19

## CLAIMS FOR RELIEF

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT AMENDMENTS OF 1988

71.

Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, paragraphs 1 through 70 above.

72.

The Fair Housing Act Amendments of 1988 ("FHAA") protect persons with disabilities against a variety of discriminatory housing practices. 42 U.S.C. § 3601 *et seq.*

73.

A person is protected by the FHAA if he has a "physical or mental impairment which substantially limits one or more life activities." 42 U.S.C. 3602(h); *see also* 24 C.F.R. § 100.201.

74.

The FHAA broadly prohibits discrimination against persons with disabilities with respect to the sale or rental of a dwelling. Specifically, the FHAA prohibits discrimination with respect to the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such

20

dwelling because of a handicap of that person." 42 U.S.C §3604(f)(2); *see also* 42
U.S.C. § 3604(f)(1); 24 C.F.R. § 100.202(a).

75.

Pursuant to the FHAA, housing providers must make "reasonable
accommodations in rules, policies, practices, or services, when such
accommodations may be necessary to afford such person [with a disability] equal
opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

76.

Defendants provide housing to elderly and disabled individuals at Briarcliff
Summit.

77.

Plaintiffs and other tenants at Briarcliff Summit suffer from disabilities that
substantially limit their major life activities. Plaintiffs Troncone and Wood are
visually impaired, and Plaintiff Hill is physically impaired and mentally disabled.

78.

Defendants have knowledge of Plaintiffs' and other tenants' disabilities.
When tenants move into Briarcliff Summit, they are required to provide a letter
from a medical provider specifying their disabilities. Plaintiffs provided

21

information regarding their disabilities to management upon moving into Briarcliff Summit.

## Defendants' Failure to Accommodate Plaintiffs' Requests for Adequate Notice

79.

Defendants place various written notices regarding important community and building events for tenants on bulletin boards at Briarcliff Summit.

80.

Because of their visual impairment, Plaintiffs Troncone and Wood are unable to read the written notices posted by Defendants. Thus, several visually-impaired tenants, including Mr. Troncone, requested that Defendants provide them oral notification of the contents of the notices.

81.

When management failed to respond to this request, Plaintiff Troncone and other visually-impaired tenants sought assistance from the Georgia Advocacy Office. The Georgia Advocacy Office contacted Defendants in August 2003 requesting that a reasonable accommodation be made to ensure that visually-impaired tenants are made aware of the contents of the notices.

22

82.

The requested accommodation – oral notification of notices – was
reasonable and necessary to afford Plaintiffs Troncone, Wood, and other visually-
impaired tenants at Briarcliff Summit, an equal opportunity to use and enjoy the
housing of their choice.

83.

In addition, the requested accommodation – oral notification of notices – did
not impose a significant financial or administrative burden on Defendants, nor did
it represent a significant modification to Defendants' existing method of notifying
tenants of various issues related to the building.

84.

Defendants refused to accommodate the visually-impaired tenants' requests
for oral notification.

85.

As a result, Defendants have denied disabled persons access to a facility or
service that is necessary to the disabled persons' equal opportunity to use and
enjoy the dwelling.

86.

Indeed, notification by accessible means is imperative for any tenant who has a visual impairment.

87.

As a result, Defendants have violated the FHAA. 42 U.S.C. §§ 3602, 3604.

## Defendants' Failure to Repair Intercom Systems

88.

The apartments at Briarcliff Summit contain intercom systems that building management uses to notify the tenants, all of whom are elderly or disabled, of general announcements and any emergencies that may arise.

89.

Having an operable intercom system is a critical feature for a facility that rents to elderly and disabled individuals and is necessary to the tenants' use and enjoyment of the building.

90.

By refusing to repair the elderly and disabled tenants' intercoms, Defendants have denied disabled persons access to a facility or service that is necessary to the disabled persons' equal opportunity to use and enjoy the dwelling.

24

91.

In addition, Defendants risk placing the health and safety of the tenants in jeopardy by failing to maintain the intercoms in an operable condition.

92.

Indeed, notification of emergencies by accessible means is imperative for the elderly and/or disabled tenants residing in Briarcliff Summit.

93.

As a result, Defendants have violated the FHAA. 42 U.S.C. §§ 3602, 3604.

## Defendants' Failure to Maintain Emergency Call-for-Aid Cords

94.

Apartments at Briarcliff Summit are equipped with emergency pull cords. The purpose of the emergency pull cords is to provide the tenants an easy way to notify management of any emergencies that may arise.

95.

Given that many disabled and elderly individuals live in Briarcliff Summit, having operable emergency pull cords is critical to the tenants' use of the building.

96.

According to a HUD inspection report, as of December 2004, 41% of the emergency pull cords in the tenants' apartments were inoperable.

97.

With respect to apartments that have operable pull cords, in numerous instances, management has failed to respond to emergencies signaled by the tenants' use of the pull cords.

98.

Given the demographic of tenants living in Briarcliff Summit, *i.e.*, the elderly and/or disabled, the emergency call-for-aid cords are an imperative benefit and service provided to the tenants, particularly given the risk that emergencies may arise with the elderly and disabled persons.

99.

The requested accommodations – repair and/or response to the pull cords – did not impose a significant financial or administrative burden on Defendants, yet Defendants refused to accommodate Plaintiffs' requests.

26

100.

By failing to respond to the emergencies signaled by the tenants' use of the pull cords and refusing to repair inoperable pull cords in the building, Defendants have denied the elderly and/or disabled tenants of a facility that is critical to their use of the apartments.

101.

Indeed, notification of emergencies at Briarcliff Summit is critical given the demographic of tenants residing at the apartments.

102.

For these reasons, Defendants have violated the FHAA. 42 U.S.C. §§ 3602, 3604.

## COUNT II
## VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

103.

Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, paragraphs 1 through 102 above.

27

104.

Pursuant to Section 504 of the Rehabilitation Act, no qualified individual with a disability shall be excluded from, denied the benefits of, or subjected to discrimination under any program that receives federal financial assistance. 29 U.S.C. § 794(a).

105.

Recipients of federal financial assistance must take steps to ensure that information about services and communications are accessible to persons with qualified disabilities, including, but not limited to, persons who are hearing-impaired, visually-impaired, and speech-impaired. 29 U.S.C. § 794.

106.

Plaintiffs Troncone, Wood and Hill are qualified individuals with disabilities within the context of the Rehabilitation Act. Mr. Troncone and Ms. Wood suffer from visual impairments that substantially limit their major life activities. Ms. Hill's mental disability substantially limits her major life activities.

28

107.

Defendants have actual knowledge of Plaintiffs' and tenants' disabilities.
When tenants move into Briarcliff Summit, they are required to provide a letter
from a medical provider specifying their disabilities. Plaintiffs provided
information regarding their disabilities to management upon moving into Briarcliff
Summit.

108.

Defendants are recipients of federal financial assistance.

109.

In particular, Defendants receive rental payments from the federal
government through HUD's subsidized housing program, which provides rental
subsidies on behalf of elderly and disabled tenants residing in privately-owned
housing facilities.

110.

Defendants accept the federal rent subsidies provided by HUD to the elderly
and disabled tenants at Briarcliff Summit. Thus, Defendants are recipients of
federal financial assistance under Section 504 of the Rehabilitation Act.

29

## Defendants' Failure to Provide Adequate Notice to Visually-Impaired Tenants

111.

Defendants place various written notices regarding community and building events for the tenants on bulletin boards at Briarcliff Summit.

112.

Because of their disability, Plaintiffs Troncone and Wood are unable to read the notices posted by Defendants on the bulletin boards. Thus, several visually-impaired tenants, including Plaintiffs Troncone and Wood, requested that management provide them oral notification of the contents of the notices.

113.

When management failed to respond, Plaintiff Troncone and other visually impaired tenants contacted the Georgia Advocacy Office for assistance. The Georgia Advocacy Office subsequently contacted Defendants in August 2003 requesting that a reasonable accommodation be made to ensure that visually-impaired tenants be made aware of the contents of the notices.

114.

The requested accommodation – oral notification of notices – was reasonable and necessary to ensure that Plaintiffs Troncone, Wood, and other

visually-impaired tenants receive important information about services and communications regarding Briarcliff Summit.

115.

In addition, the requested accommodation – oral notification of notices – did not impose a significant financial or administrative burden on Defendants, nor did it represent a significant modification to Defendants' existing method of notifying tenants of various issues related to the building.

116.

Defendants refused to accommodate the visually-impaired tenants' requests for oral notification.

117.

As a result, Defendants have denied disabled persons the benefits of a facility or service that is necessary to the disabled persons' equal opportunity to use and enjoy the dwelling of their choice. 29 U.S.C. § 794(a); 24 C.F.R. § 8.1.

118.

Indeed, providing notification of issues or emergencies by accessible means is imperative for the elderly and/or disabled tenants.

31

119.

As a result, Defendants, recipients of federal financial assistance, have violated the Rehabilitation Act. 29 U.S.C. § 794(a).

## **Defendants' Failure to Repair Intercom Systems**

120.

The apartments at Briarcliff Summit contain intercom systems that building management uses to notify the tenants, all of whom are elderly or disabled, of any emergencies that may arise.

121.

Having an operable intercom system in a facility that rents to elderly and disabled individuals is necessary to the tenants' use and enjoyment of the building.

122.

Defendants have failed to repair these intercoms in a timely manner.

123.

As a result, Defendants have denied disabled persons the benefits of a service that is necessary to the disabled persons' opportunity to use and enjoy the dwelling and receive important communications regarding Briarcliff Summit.

32

124.

Consequently, Defendants, recipients of federal financial assistance, have violated the Rehabilitation Act. 29 U.S.C. § 794(a).

## COUNT III
## FAILURE TO REPAIR

125.

Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, paragraphs 1 through 124 above.

126.

The Georgia Code places certain obligations on landlords renting to tenants in the State of Georgia. Under O.C.G.A. § 44-7-13, a landlord must keep the premises in repair. Because Defendants act as landlord to the tenants living at Briarcliff Summit, they are obligated to maintain the premises in repair.

127.

"When a landlord is notified that the premises are out of repair, it becomes his duty to inspect and investigate in order to make such repairs as the safety of the tenant requires." *Davis v. All-State Homes & Properties*, 233 Ga. App. 60, 60, 503 S.E.2d 331, 333 (Ga. Ct. App. 1998) (citing O.C.G.A. § 44-7-13).

128.

Likewise, O.C.G.A. § 44-7-2(b)(3) mandates that landlords must satisfy the

duties imposed on them by housing codes. Failure to comply with housing code

provisions is relevant to the question of whether a landlord has violated the duty to

repair set forth in O.C.G.A. § 44-7-13. *Roth v. Wu,* 199 Ga. App. 665, 666, 405

S.E.2d 741, 742 (Ga. Ct. App. 1991).

129.

Briarcliff Summit, as a building containing dwelling units, must comply

with Sections 19 through 26 of the Atlanta Housing Code, which prohibit highly

hazardous conditions and delineate minimum standards for safety, comfort and

cleanliness. Atlanta Housing Code Section 5(a).

130.

Section 19(c) of the Atlanta Housing Code provides that "[i]t shall be

unlawful for any owner or operator to allow . . . [d]efective or improperly

maintained electrical, heating, ventilation, sanitation or like facilities which

endanger or insufficiently protect the health, safety or general welfare of

occupants."

34

131.

Section 19(f) of the Atlanta Housing Code prohibits conditions that are

"dilapidated, decayed, unsafe, unsanitary or that unreasonably expose occupants or

the general public to illness, disease or physical injury."

132.

Section 23(d) of the Atlanta Housing Code provides that stairways "shall be

maintained in sound condition and . . . repair."

133.

Section 25(b) provides that "[i]t shall be the specific responsibility of the

owner or operator . . . [t]o maintain cleanliness of Shared or Public Area[s]."

134.

Defendants have violated the Atlanta Housing Code by failing to abide by

their duty to repair. Defendants have failed to maintain the cleanliness of the

common areas of Briarcliff Summit, creating unsanitary conditions and potentially

exposing tenants to illness, disease or physical injury.

135.

Plaintiffs and other tenants have repeatedly provided notice to Defendants of disrepair in their apartments, including broken air conditioners, intercoms, and emergency call-for-aid cords, and Defendants have failed to make adequate repairs.

136.

Tenants have notified management that the common areas at Briarcliff Summit, including the stairwells, are unclean and unsafe, and Defendants have failed to rectify the problems.

137.

Additionally, tenants have repeatedly informed Defendants that the building elevators are not working properly, but Defendants have not adequately repaired the elevators.

138.

The landlord is responsible for "damages from failure to keep the premises in repair." O.C.G.A. § 44-7-14.

139.

Plaintiffs have been injured by Defendants' failure to make repairs.

36

140.

Defendants are liable for Plaintiffs' damages arising from Defendants' failure to make repairs.

## COUNT IV
## FAILURE TO KEEP PREMISES SAFE

141.

Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, paragraphs 1 through 140 above.

142.

The Georgia Code holds an owner of land responsible for maintaining the premises in a safe condition. O.C.G.A. § 51-3-1 provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

143.

Defendants invited Plaintiffs and other tenants to live at Briarcliff Summit by accepting them as tenants.

37

144.

Defendants have failed to maintain a safe environment for the tenants at Briarcliff Summit by not providing adequate security.

145.

As a result, criminal activities, including rape, robbery, aggravated assault, and narcotics use have occurred at Briarcliff Summit, creating an unsafe environment and jeopardizing Plaintiffs' security and well-being.

146.

Defendants have failed to maintain a safe environment for the tenants at Briarcliff Summit by not adequately repairing the elevators.

147.

As a result, when emergencies have arisen, emergency medical personnel have not been able to reach tenants in need of medical care.

148.

Plaintiffs have been injured by Defendants' failure to maintain a safe environment at Briarcliff Summit.

38

149.

Pursuant to O.C.G.A. § 51-3-1, Defendants are liable for Plaintiffs' damages arising from Defendants' failure to maintain the premises and approaches in a safe manner.

## COUNT V
## BREACH OF CONTRACT

150.

Plaintiffs repeat, reallege, and incorporate by reference, as if fully set forth herein, paragraphs 1 through 149 above.

151.

Plaintiffs and other tenants signed Lease Agreements for Affordable Housing with Defendants before moving into their apartments.

152.

The Lease Agreement for Affordable Housing requires management to "regularly clean all common areas of the community;" "maintain the common areas and facilities in a safe condition;" "maintain all equipment and appliances in safe and working order;" and "make necessary repairs with reasonable promptness." Lease Agreement at Section 10(a) (Maintenance).

39

153.

Defendants have violated their contract with Plaintiffs and other tenants to clean common areas, allowing garbage and human wastes to accumulate, thereby resulting in unsafe and unsanitary conditions.

154.

Defendants have failed to maintain equipment and appliances – including intercoms, emergency call-for-aid cords, air conditioners and elevators – in safe and working condition.

155.

Defendants have not made necessary repairs in tenants' apartments,

including Defendants' refusal to repair water leaks, equipment and appliances in a timely manner.

156.

Defendants have therefore committed breach of contract.

157.

Plaintiffs have been injured by Defendants' failure to comply with the terms of the Lease Agreement.

40

158.

Defendants are liable for Plaintiffs' damages arising from Defendants'

failure to comply with the terms of the Lease Agreement.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

demand that this action be tried by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

(a)    assume jurisdiction over this action;

(b)    enter judgment on Counts I, II, III, IV, and V of the Complaint in

favor of Plaintiffs and against all Defendants;

(c)    grant injunctive relief to Plaintiffs, requiring Defendants to maintain

the premises in accordance with the above-referenced laws;

(d)    award in favor of Plaintiffs and against Defendants compensatory and

punitive damages in an amount to be determined at trial;

(e)    award in favor of Plaintiffs and against Defendants prejudgment

interest and post-judgment interest in all amounts awarded as compensatory

damages, in an amount to be calculated in accordance with law;

(f)    award Plaintiffs their attorneys' fees and costs; and

41

(g)     award in favor of Plaintiffs and against Defendants such other, further,

and additional relief as the Court deems just and appropriate.

This _12 th_ day of March, 2007.

KING & SPALDING LLP

Jameson B. Carroll
Georgia Bar No. 112640
Rita Bolt Barker
Georgia Bar No. 141725
1180 Peachtree Street NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

COUNSEL FOR PLAINTIFFS